**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **CORNELIA V.R. STREETER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 14-cv-10290-DJC** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    **December 8, 2015**

### I.      Introduction

Plaintiff Cornelia V.R. Streeter ("Streeter") has filed this lawsuit against Defendant the United States of America ("United States") pursuant to 28 U.S.C. § 1346 and 26 U.S.C. §§ 6511 and 7422 seeking a refund, with interest, of the sum paid to remove a lien filed by the Internal Revenue Service ("IRS") on her property (Count I).  D. 1.  Streeter also brings a claim for damages pursuant to 26 U.S.C. § 7432 for the IRS's alleged failure to release the lien (Count II) and requests attorneys' fees and costs.  Id.  Both Streeter and the United States have moved for summary judgment on all of Streeter's claims.  D. 41; D. 44.  For the reasons stated below, the Court DENIES in part and ALLOWS in part the motions.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless

1

Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.

1996)).   The movant bears the burden of demonstrating the absence of a genuine issue of

material fact.   Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477

U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the

allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986), but "must, with respect to each issue on which she would bear the burden of proof at

trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex

rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).   "As a general rule, that requires

the production of evidence that is 'significant[ly] probative.'"   Id. (quoting Anderson, 477 U.S.

at 249) (alteration in the original).  The Court "view[s] the record in the light most favorable to

the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d

20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are taken from the parties' Statement of Agreed Facts, D. 42, and the

exhibits to the complaint, D. 1.  The parties agree that the material facts are not in dispute.  D. 43

at 2-3; D. 46 at 3.

Streeter was previously married to Anwar Wissa ("Wissa").  They had two children and

divorced in 2001.  D. 42 ¶ 2.  Before their divorce, Streeter and Wissa jointly owned, as tenants

by the entirety, a property located at 83 Asbury Street in Topsfield, Massachusetts (the

"Property").  Id. ¶ 4.  On May 10, 2001 (*nunc pro tunc* March 19, 2001), the Essex Probate and

Family Court entered a divorce decree stating that Wissa was to transfer all "his right, title and

interest" in the Property to Streeter and Streeter was to pay Wissa $1,164,995.50 on or before

June 15, 2001.  Id. ¶¶ 5-7.

Following entry of the divorce decree, Wissa abducted the two children and left the United States. Wissa has not returned, but the children were returned in 2003. Id. ¶¶ 9, 14. With Wissa absent from the country, on August 9, 2001, the Essex Probate and Family Court directed that Streeter's payment for the Property otherwise due to Wissa to be held in an escrow account. Id. ¶ 10. Streeter and her attorney at that time established an escrow account in the name of the designated escrow agents, not in the name of Wissa. Id. ¶ 11. Streeter funded the account in the amount of $1,164,995.50 and the account opened with a starting date of September 24, 2001. Id. Wissa, absent from the country, never filed a deed to transfer his interest in the Property but, sometime in 2001, Streeter recorded a copy of the divorce decree in the Southern Essex District Registry of Deeds. Id. ¶ 18.

On March 4, 2004, the IRS issued a Notice of a Federal Tax Lien on all property belonging to Wissa. Id. ¶ 15. The tax lien stated that Wissa owed $247,126 for the tax year 2000. Id. Streeter and Wissa did not file a joint tax return for the year 2000 and Streeter was not personally liable to pay Wissa's tax liability. Id. ¶¶ 16-17. The Notice of a Federal Tax Lien was addressed to Wissa at the Property's address, where Streeter was living at the time. Id. ¶ 24. Streeter knew Wissa was receiving tax notices, but did not know that they related to a lien on the Property. Id. On March 11, 2004, the IRS filed the tax lien with the Southern Essex District Registry of Deeds. Id. ¶ 15. Pursuant to Mass. Gen. L. c. 183, § 43, and by a declaration of the Essex Probate and Family Court issued in January 2010, Wissa did not have an interest in the Property when the Notice of Federal Tax Lien was filed in 2004. Id. ¶¶ 12, 18. In 2009, Streeter learned of the lien on the Property in the course of obtaining a mortgage on the Property. Id. ¶ 24.

In January 2010, Streeter requested a certificate of non-attachment from the IRS for the lien on the Property pursuant to 26 U.S.C. § 6325(e).  Id. ¶ 25.[1]  The IRS responded, stating that such a request was not proper and suggested that Streeter request a certificate of discharge.  Id. ¶ 26.  In February 2010, Streeter requested a certificate of discharge from the IRS and provided a copy of the January 2010 declaration from the Essex Probate and Family Court and a letter from Streeter's attorney stating that Streeter made the required payment for the Property in September 2001.  Id. ¶ 27.  Streeter did not include any supporting documents, such as a canceled check for the payment, with the letter to the IRS.  Id.; D. 45-1 ¶ 4.  In June 2010, despite the lien, Streeter sold a small portion of the Property to an adjoining landowner.  D. 42 ¶ 28.  In 2011, Streeter found a buyer to sell the majority portion of the Property and, according to Streeter, the buyer insisted that the lien be resolved before purchasing the Property.  Id. ¶¶ 29-30.  The ultimate deadline set to sell the Property was March 20, 2012.  Id. ¶ 40.

Between December 2011 and March 2012, Streeter's attorneys contacted the IRS regarding the lien.  Id. ¶ 31.  On January 23, 2012, Streeter filed another application for a certificate of discharge pursuant to 26 U.S.C. § 6325(b)(4) using Form 14135 (Rev. 06-2010) accompanied by a letter stating that "the Applicant will make a <u>cash</u> deposit . . . .  In accordance with Publication 783, Q1, the deposit is <u>not</u> being submitted with this application."  D. 42 ¶ 32 (emphasis in the original); D. 1-5 (Application for Certificate of Discharge).  In February 2012, Streeter's attorneys contacted the IRS employee assigned to the case, Jo Anne Mixner ("Mixner"), who stated that a certificate of discharge would not be granted and the only way to resolve the lien would be to pay Wissa's tax debt in full.  D. 42 ¶¶ 34, 37.  Mixner (erroneously)

---

[1] Paragraph 25 states that the request for a certificate of non-attachment was made pursuant to Section 6325(a), but Streeter's other filings indicate that the request was made pursuant to Section 6325(e), the applicable section for such a certificate.  D. 1-9 at 8 (Claim for Refund and Request for Abatement).

believed that the lien had attached to the Property before it had transferred to Streeter.  Id. ¶ 35;

D. 45-1 ¶ 8.  From late February 2012 through early March 2012, Streeter's attorneys also spoke

with IRS attorney Michael Fiore ("Fiore") regarding a written statement from the IRS that the

Property was not subject to the lien.  D. 42 ¶ 38.  On March 8, 2012, Fiore forwarded a draft to

Mixner and asked her to contact him, but she did not as she was out of the office.  Id. ¶ 39.

Streeter's attorneys again had a conversation with Mixner on March 12, 2012, but the parties

disagree about what was said and believe it is immaterial.  Id. ¶ 41.  With the deadline to sell the

Property approaching, Streeter decided to pay Wissa's tax debt to remove the lien and later seek

a refund.  Id. ¶ 42.   Streeter's attorney contacted Mixner, and not Fiore, to request a payoff

amount.  Id.  The IRS faxed a Letter 3641 (02-2010)[2] stating the payoff amount for payment by

March 20, 2012 and that the lien would be released if payment was made.  Id. ¶¶ 43-45; D. 1-6

("payoff" letter).  On March 16, 2012, Streeter, through her attorneys, paid the IRS $253,434.12

by cashier's check.  D. 42 ¶ 46; D. 1-7.   A letter was not given to the IRS along with the

cashier's check and the check was not designated as a deposit for discharge of the lien.  D. 42 ¶

47.  That same day, the IRS provided a Certificate of Release of Federal Tax Lien on Form

668(Z) (Rev. 10-1999) certifying that Wissa met the requirements under 26 U.S.C. § 6325(a) and

that the lien on the Property was released.  Id. ¶ 48; D. 1-8 (Certificate of Release of Federal Tax

Lien).  On October 25, 2012, Streeter filed a Claim for Refund and Request for Abatement on

Form 843.  D. 42 ¶ 49; D. 1-9 (Claim for Refund and Request for Abatement).  The IRS denied

Streeter's claim by letter on June 28, 2013, stating that "the assessment of the tax against Mr.

Wissa was proper" and that "our lien had attached."  D. 42 ¶ 50; D. 1-10 (Denial letter).

---

[2] According to the IRS Manual, "[p]ayoff computations are completed using the ALS Payoff Utility, which generates . . . Letter 3641, Third Party Lien Payoff."  IRM 5.19.12.7.5.2., https://www.irs.gov/irm/part5/irm_05-019-012-cont01.html (last visited Dec. 8, 2015)

**IV.     Procedural History**

Streeter filed this action on February 7, 2014.  D. 1.  The United States moved to dismiss on April 16, 2014.  D. 10.  After the Court (Young, J.) denied the motion to dismiss on July 10, 2014, D. 16, the case was reassigned to this session of the Court.  D. 19.  The parties cross-moved for summary judgment on September 10, 2015.  D. 41, 44.  The Court heard the parties on their pending summary judgment motions on October 29, 2015 and took the matters under advisement.  D. 48.

**V.     Discussion**

    **A.     Claim for Refund**

Streeter seeks a refund for the sum she paid to the IRS to remove a lien placed on her Property for her ex-husband's tax debt for the year 2000 (Count I).  D. 1.  To be clear, Streeter's payment to the IRS was for taxes that she did not owe, and on the Property that was not properly subject to the tax lien.  That is, the parties agree that Streeter and Wissa did not file a joint tax return for the year 2000 and that Streeter was not personally liable to pay Wissa's tax liability.  D. 42 ¶¶ 16-17.  They also agree that Wissa did not have an interest in the Property at the time the Notice of Federal Tax Lien was filed on the Property in 2004.  Id. ¶¶ 12, 18.  Based on certain actions by the IRS, Streeter was not able to pursue the remedy traditionally available to third parties in seeking a discharge of a tax lien under 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4).  As discussed below, Streeter is entitled to summary judgment for her refund claim (Count I) where this Court has subject matter jurisdiction and the United States has waived sovereign immunity under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. §§ 6511 and 7422.

Section 1346(a)(1), as described by the Supreme Court, uses "broad language" in expressing Congress' "unequivocal intent" to confer jurisdiction and waive the Government's sovereign immunity for a refund suit:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) *Any* civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or *collected*, or any penalty claimed to have been *collected* without authority or any sum alleged to have been excessive or in any manner wrongfully *collected* under the internal-revenue laws.

United States v. Williams, 514 U.S. 527, 531-32 (1995) (quoting 28 U.S.C. § 1346(a)(1)) (emphasis in the original). "28 U.S.C. § 1346(a)(1) gives federal district courts jurisdiction over suits against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." Dickow v. United States, 740 F. Supp. 2d 231, 234 (D. Mass. 2010) (quotation mark and citation omitted), aff'd, 654 F.3d 144 (1st Cir. 2011). Section 7422(a) also waives sovereign immunity for refund suits. See Dickow, 740 F. Supp. 2d at 234-35.

> *No suit or proceeding shall be maintained* in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected,  . . . , or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Id. (quoting 26 U.S.C. § 7422(a)) (emphasis in the original); see Wojcicki v. Internal Revenue Serv., No. 11-cv-40175-TSH, 2012 WL 1118626, at *1 (D. Mass. Mar. 7, 2012) (recognizing that "28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 together authorize a taxpayer who believes that the IRS has incorrectly assessed a tax liability against them to sue for a refund").

A taxpayer who brings a refund suit under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 must have actually paid the assessment and filed an administrative claim for a refund before going to court.  See Wojcicki, 2012 WL 1118626, at *1.  Section 7422(a) requires that a refund claim is "duly filed" with the IRS as set forth in Section 6511(a).  See Dickow, 740 F. Supp. 2d at 235.  According to Section 6511(a), a claim for a refund must be filed with the IRS within two years from the time the tax was paid.  See id.

Notably, Streeter's refund claim to recover a tax "erroneously . . . collected" is similar to that presented in Williams.  514 U.S. at 529-31.  There, Williams, to sell a certain piece of her property, paid a tax under protest to remove a lien placed on the property by the IRS for her ex-husband's tax debt.  Id.  The lien attached after the property had been transferred to her during the couple's divorce.  Id.  The Supreme Court held that Section 1346(a)(1) "clearly allows one from whom taxes are erroneously or illegally collected to sue for a refund of those taxes," id. at 536, following administrative exhaustion and a timely filing in district court pursuant to 26 U.S.C. §§ 6511 and 7422, id. at 532-33.  Otherwise, a "strained reading" of "§ 1346(a)(1) . . . would leave people in Williams' position without a remedy" and "Congress did not intend refund actions under § 1346(a)(1) to be unavailable to persons situated as Lori Williams."  Id. at 536; see EC Term of Years Trust v. United States, 550 U.S. 429, 434-35 (2007) (noting that the holding in Williams was based "on the specific understanding that no other remedy . . . was open to the plaintiff in that case").

The United States correctly notes that in 1998, following the Williams decision, Congress amended the Internal Revenue Code and enacted 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4) to address similar situations.  D. 45 at 7; D. 46 at 8.  Section 6325(b)(4)(A) sets forth a procedure

for a third party to seek the removal of a lien from a property by requesting a certificate of discharge from the IRS.  Section 6325(b)(4)(A) provides that:

> At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner--
> (i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or
> (ii) furnishes a bond acceptable to the Secretary in a like amount.

26 U.S.C.  § 6325(b)(4)(A).  Following the issuance of a certificate of discharge, Section 6325(b)(4)(B) requires that the Secretary of the Treasury refund the amount deposited or release the bond, to the extent that the Secretary determines that the unsatisfied liability giving rise to the lien can be satisfied from a source other than property owned by the third party, or that the value of the interest of the United States in the property is less than the Secretary's prior determination of its value.   Section 7426(a)(4) allows a third party to bring an action challenging the Secretary's determination:

> If a certificate of discharge is issued to any person under section 6325(b)(4) . . . , such person may, within 120 days after the day on which such certificate is issued, bring a civil action . . .  for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary.  No other action may be brought by such person for such a determination.

26 U.S.C. § 7426(a)(4).  The United States urges that, following Williams, Sections 6325(b)(4) and 7426(a)(4), rather than Section 1346(a)(1), "provide[] the sole waiver of immunity" for a refund suit.  D. 45 at 10; D. 46 at 8.

The United States argues that Streeter failed to follow the procedures discussed above to obtain a certificate of discharge under Section 6325(b)(4), as opposed to a release of the lien (which is what Streeter received from the IRS here), and is thus barred from bringing suit and recovering a refund.  D. 45 at 9; D. 46 at 9.  It is important to note that there is a "fundamental

legal distinction between the 'release' of a federal tax lien provided for by . . . § 6325(a) and the 'discharge' of property from the tax lien provided for by . . . § 6325(b)." <u>Adamowicz v. United States</u>, 101 Fed. Cl. 485, 487-88 (2011) (quoting Internal Revenue Manual § 5.17.2.8.3(1)). When the IRS, following a demand, issues a lien against an individual for unpaid taxes, the lien applies to all of the individual's property. <u>See</u> 26 U.S.C. §§ 6321 and 6322. A release "extinguishes the federal tax lien itself," requiring that the amount owed underlying the tax liability is paid or that the lien is deemed unenforceable. <u>See</u> <u>Adamowicz</u>, 101 Fed. Cl. at 488 (quoting Internal Revenue Manual § 5.17.2.8.3(1) (internal quotation marks omitted); 26 C.F.R. § 301.6325-1(a)). Following a release, the IRS no longer has a lien against any of the individual's property. A discharge, however, is applicable only to a portion of an individual's property subject to the lien. A discharge "permit[s] the transfer of [a] property free from the lien," but does not release an individual's other property from the lien. <u>Id.</u> (quoting 26 C.F.R. § 301.6325-1(c)); Internal Revenue Manual § 5.17.2.8.3(1). Here, the IRS issued a certificate of release for the lien against Wissa's property for his tax debt because Streeter paid the IRS the amount Wissa owed.

At base, the IRS was able to collect a $253,434.12 tax payment that Streeter did not personally owe, on a lien that should not have applied to the Property, and then refused to refund that money. Streeter attempted to follow the statutory procedures to obtain a certificate of discharge necessary to pursue a refund action, but was prevented from doing so by the IRS. In January 2012, Streeter filed (for a second time) an application for a certificate of discharge pursuant to 26 U.S.C. § 6325(b)(4) stating that she would make the required cash deposit. D. 42 ¶¶ 27, 32. The IRS denied her application, <u>id.</u> ¶ 33, and argues that the denial was the result of

Streeter failing to make a deposit or post a bond as required by Section 6325(b)(4), D. 45 at 9; D.

46 at 9.  However, the IRS's own application form used by Streeter explicitly states that:

> Discharge under 6325(b)(4) requires a bond or deposit but do not send one with the application.  The Advisory Group manager must first determine the amount of bond or deposit needed for the discharge and determine that the bond company, if applicable, is from the approved list.

IRS Publication 783 (Rev. 6-2010), Q1, https://www.irs.gov/pub/irs-pdf/p783.pdf (last visited

Dec. 8, 2015).  There are no facts suggesting that an Advisory Group manager from the IRS

communicated with Streeter following her application.  While Streeter did communicate with

Mixner, a Revenue Officer at the IRS's office in Rhode Island, D. 45-1 ¶ 1, she simply stated

that a certificate of discharge would not be issued and never provided a deposit or bond amount

or bond company information in accordance with the application's instructions, D. 42 ¶¶ 34, 37.

Streeter, in the face of losing out on the sale of the Property, requested a payoff amount

from the IRS to remove the lien.  D. 42 ¶ 42.  The payoff letter the IRS sent in response,

however, stated the amount to obtain a certificate of *release*, not a certificate of *discharge*.  D. 1-

6 at 2.  On March 16, 2012, Streeter, presumably in an attempt to obtain a certificate of discharge

and to preserve her right to bring a refund action under 7426(a)(4), simply submitted a cashier's

check for the stated amount.  D. 42 ¶¶ 46-47.  Streeter did not include a letter along with the

check or designate the check in any way.  Id.  Still, the IRS issued a certificate of release under

Section 6325(a) the same day.  Id. ¶ 48.

According to IRS regulations, the cashier's check should have been treated as a deposit

under Section 6325(b)(4) and a certificate of *discharge* should have been issued.  This would

have preserved the remedy the United States argues is now unavailable to Streeter under Section

7426(a)(4).  According to the regulation:

> any application for certificate of discharge made by a property owner who is not
> the taxpayer, and any amount submitted pursuant to the application, will be
> treated as an application for discharge and a deposit under section 6325(b)(4)
> unless the owner of the property submits a statement, in writing, that the
> application is being submitted under another paragraph of section 6325 and not
> under section 6325(b)(4), and the owner in writing waives the rights afforded
> under paragraph (b)(4), including the right to seek judicial review.

26 C.F.R. § 301.6325-1(b)(5). This regulation presumes that a payment made by a third party to remove a lien is a part of their application for a certificate of discharge–an application which Streeter had sought twice and corresponded with the IRS regarding numerous times–to prevent leaving a third party without a remedy. Compare Portsmouth Ambulance, Inc. v. United States, 756 F.3d 494, 501-02 (6th Cir. 2014) (affirming dismissal of refund action where the IRS issued a certificate of release instead of a certificate of discharge because plaintiff made payments to the IRS, but failed to request a certificate of discharge) with Reaser v. United States, 731 F. Supp. 2d 681, 683-84 (N.D. Ohio 2010) (allowing refund claim under Section 1346(a)(1) where the IRS issued a certificate of release when plaintiff posted a cash bond but had not requested a certificate of discharge).

There is a line of cases, as the United States notes, denying a third party's refund claim brought under Sections 1346(a)(1) and 7422(a) where the third party failed to follow the procedures set forth in Section 6325(b)(4) to obtain a certificate of discharge or initiate a timely refund action under Section 7426(a)(4) once a certificate was obtained. See, e.g., Portsmouth Ambulance, Inc., 756 F.3d at 501 (plaintiff did not request certificate of discharge); Munaco v. United States, 522 F.3d 651, 657 (6th Cir. 2008) (same); Little Italy Oceanside Investments, LLC v. United States, No. 14-cv-10217-MFL, 2015 WL 4878247, at *8 (E.D. Mich. Aug. 14, 2015) (same); McGinley v. United States, No. 12-cv-5471-JAP, 2013 WL 5466634, at *6 (D.N.J. Sept. 30, 2013) (plaintiff failed to file action in district court within 120 days of obtaining certificate of discharge); Schuyler v. United States, No. 11-cv-7059-GHK, 2011 WL

7463964, at *2 (C.D. Cal. Dec. 19, 2011) (plaintiff did not request certificate of discharge) (collecting cases).  As noted by Streeter, in these cases, however, a remedy was available, but was not properly pursued.  D. 47 at 8-10.  By contrast, Streeter pursued the proper procedures in requesting a certificate of discharge, but the IRS effectively prevented her from satisfying the conditions necessary to obtain one.

Considering that the Supreme Court has not overturned its holding in <u>Williams</u> following the 1998 amendments to the Internal Revenue Code, Sections 1346(a)(1) and 7422(a) confer subject matter jurisdiction and waive sovereign immunity for a refund suit brought by a third party who is otherwise left without a remedy.  <u>See</u> <u>EC Term of Years Trust</u>, 550 U.S. at 434-35 (clarifying that in <u>Williams</u> "we decided that § 1346(a)(1) authorizes a tax-refund claim by a third party . . . on the specific understanding that no other remedy was open to the plaintiff" and affirming dismissal of a trust's wrongful levy action under § 1346(a)(1) because it could have sought a remedy under § 7426(a)(1) but missed the limitations period).  Because the condition precedent for Streeter's refund action—namely, the IRS granting a certificate of discharge—was not given, she was left without a remedy under Sections 6325(b)(4) and 7426(a)(4).

While courts in other circuits have expressed concern that allowing such a suit "would render meaningless the 120 day limitations period" to bring a refund action under 7426(a)(4) once a certificate of discharge is obtained, <u>see, e.g.</u>, <u>Munaco</u>, 522 F.3d at 657, allowing Streeter's refund suit does not implicate that limitations period.  Here, the IRS effectively prevented Streeter from obtaining a certificate of discharge in the first place to begin the start of the 120 day period.

The United States points to Section 7426(h) in arguing that Streeter could have pursued other avenues of relief.  In the United States' view, Streeter would have been able to bring a suit for damages to recoup her payment to release the lien if she had met the conditions of Section 6325(b)(4) to obtain a certificate of discharge and shown that the IRS acted negligently, recklessly or intentionally in disregarding any provision of the Internal Revenue Code.  D. 45 at 10-11; D. 46 at 13-14.  This does not account, however, for the IRS preventing Streeter from meeting those conditions to obtain a certificate of discharge in the first place.  That is, it is unclear if a party is able to bring a claim for damages under Section 7426(h) where they were never able to obtain a certificate of discharge.  Section 7426(h) applies to "any action brought under this section" and Section 7426(a)(4) allows for a refund action "[i]f a certificate of discharge [was] issued under section 6325(b)(4)."  See Coutant v. United States, No. 00-cv-14163, 2002 WL 34382737, at *3 (S.D. Fla. Feb. 27, 2002) (noting how a damages claim under Section 7426(h) is dependent on a Section 7426(a) action), report and recommendation adopted, No. 00-cv-14163, D. 28, 2002 WL 34382749 (S.D. Fla. March 20, 2002).  As discussed, the IRS did not provide Streeter with the necessary information to make a deposit or post a bond in satisfaction of Section 6325(b)(4).  Streeter was thus unable to satisfy the conditions for her to obtain a certificate of discharge to bring a claim for damages under Section 7426(h).

The United States also argues that Streeter could have pursued a remedy through 28 U.S.C. § 2410 to bring a quiet title action.  D. 45 at 6.  The Supreme Court, however, rejected the availability of such a remedy once the tax has been paid, as it has been here by Streeter.  See Williams, 514 U.S. at 538 (distinguishing between "predeprivation" remedies available to a third party prior to paying the IRS to remove a lien and "postdeprivation" remedies available after payment is made).  Moreover, Section 2410 does not otherwise provide for a refund action.  See

id.; see also Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (recognizing that "§ 2410 provides for federal court subject matter jurisdiction and for an implicit waiver of the United States' sovereign immunity only for the adjudication of an equitable action to quiet title, and not an action for money damages") (citation omitted).

The Court concludes that due to the IRS's actions, Streeter was not able to obtain a certificate of discharge pursuant to Section 6325(b)(4) and pursue relief under Section 7426(a)(4) or (h).  Because Streeter is otherwise left without a remedy, this Court has subject matter jurisdiction and the United States has waived sovereign immunity under Section 1346(a)(1) and 7422(a).  See Williams, 514 U.S. at 529.  The parties agree that Wissa had no interest in the Property when the lien was filed for his tax debt and that Streeter had no personal liability for the tax debt that she paid on the Property, D. 42 ¶¶ 12, 16-17, 18, and Streeter is thus entitled to summary judgment for her refund claim (Count I).

**B.    Claim for Damages**

As an alternative basis for relief, Streeter also seeks damages for the IRS's failure to release the lien on the Property under Section 7432(a) (Count II).  D. 43 at 14; D. 47 at 17. Section 7432(a) provides that:

> If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7432(a).  An action for damages under Section 7432(a) must be brought "within 2 years after the date the right of action accrues."  Id. at (d)(3).  "A cause of action accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action."  26 C.F.R. § 301.7432-1(i)(2).  This limitations period, as a waiver by the Government of its sovereign immunity, is a prerequisite of this Court's jurisdiction, see Zinstein

v. United States, 584 F. App'x 100 (4th Cir. 2014) (per curiam), cert. denied, 135 S. Ct. 1865 (2015), and this Court must inquire *sua sponte* into its own subject matter jurisdiction, see McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004).   Streeter appears to base her claim for damages on the IRS's denial of her application for a certificate of discharge in February 2012. D. 43 at 14-15.   It is unclear, however, when in February the IRS denied Streeter's application. D. 42 ¶¶ 33-34, 37.   Where Streeter filed this action on February 7, 2014, id. ¶ 51, it is possible Count II is untimely and a question of fact remains as to when the IRS denied Streeter's application.

Assuming *arguendo* timeliness and standing under Section 7432(a),[3] Streeter must first exhaust administrative remedies by putting the IRS on notice of her claim before filing suit.  See, e.g., Malouf v. United States, No. 10-cv-11596-GAO, 2012 WL 4480748, at *1 (D. Mass. Sept. 28, 2012); accord Muskat v. United States, 554 F.3d 183, 194-95 (1st Cir. 2009) (recognizing that a taxpayer cannot present claims in court that "substantially vary" the legal theories set forth in an administrative claim filed with the IRS).   Streeter's administrative "Claim for Refund and Request for Abatement" was filed using Form 843 (Rev. August 2011).   D. 42 ¶ 49.   Form 843 explicitly states that it is to be used for refund or abatement actions, but does not state that it is to be used for a damages claim.[4]   Streeter's description of her claim for refund does not mention Section 7432(a) or damages.   D. 1-9.   The only dollar amount listed in the description is the $253,434.12 that Streeter seeks for her refund action in Count I.   Id.   Although Streeter does

---

[3] The United States also argues that, based on the language of the statute, Streeter does not have standing to bring a damages claim under Section 7432(a) because she is not the person who was liable for lien on the Property, despite actually paying to remove the lien.  D. 46 at 13. The Court does not reach this argument because, as discussed, it lacks jurisdiction where Streeter did not exhaust administrative remedies.

[4] Instructions for Form 843 (Rev. August 2011), https://www.irs.gov/pub/irs-prior/i843--2011.pdf (last visited Dec. 8, 2015).

describe the IRS's failure to issue a certificate of discharge as "erroneous," her claim for damages beyond the amount requested for a refund due to the IRS's negligence are not encompassed by Streeter's administrative claim.

Accordingly, Streeter has failed to exhaust administrative remedies for her claim for damages (Count II) and this Court lacks jurisdiction for this claim.  See Malouf, 2012 WL 4480748, at *1.  The United States is thus entitled to summary judgment on Count II.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Streeter's motion for summary judgment.  D. 41.  The Court ALLOWS summary judgment to Streeter with respect to Count I and DENIES summary judgment with respect to Count II.

The Court ALLOWS in part and DENIES in part the United States' motion for summary judgment.  D. 44.  The Court ALLOWS summary judgment to the United States as to Count II and DENIES summary judgment as to Count I.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge